1

2

3

4

5

6

7

8

9

10     IN THE UNITED STATES DISTRICT COURT

11     FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12

13     **SHARONE A. DUNCAN,**

       Civil No. 12-CV-2355-BEN-(PCL)

14                                    Plaintiff,

       **REPORT AND
       RECOMMENDATION OF U.S.
       MAGISTRATE JUDGE RE:**

15               **v.**

       **PLAINTIFF'S MOTION FOR
       SUMMARY JUDGMENT
       [Doc. No. 12-1 ]; and**

16

17     **MICHAEL J. ASTRUE,
       Commissioner of Social Security,**

       **DEFENDANT'S CROSS
       MOTION FOR SUMMARY
       JUDGMENT AND OPPOSITION
       TO PLAINTIFF'S MOTION FOR
       SUMMARY JUDGMENT [Doc.
       No. 15, 16 ]**

18                                    Defendant.

19

20

21                              **I.**

22                         **INTRODUCTION**

23          On September 27, 2012 Plaintiff Sharone A. Duncan ("Plaintiff") filed this

24     action pursuant to the Social Security Act, 42 U.S.C. § 405(g). [Doc. No. 1.]

25     Plaintiff seeks judicial review of the Commissioner of Social Security's

26     ("Commissioner") final decision denying Plaintiff's application for disability

27     insurance benefits under Title II of the Act. (Id.) Plaintiff filed a Motion for

28     Summary Judgment, [Doc. No. 12], and Defendant filed a Cross-Motion for

Summary Judgment [Doc. No. 15], and an Opposition to Plaintiff's Motion for Summary Judgment. [Doc. No. 16.] The Honorable Roger T. Benitez referred the matter to the undersigned judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After a thorough review of the pleadings and the entire record submitted in this matter, this Court recommends that Plaintiff's Motion for Summary Judgment be **<u>DENIED</u>** and that Defendant's Cross-Motion for Summary Judgment AND Opposition to Plaintiff's Motion for Summary Judgment be **<u>GRANTED</u>**.

## II.

## BACKGROUND

**A. Procedural Background**

Plaintiff filed an application for Disability Insurance Benefits on September 27, 2006, alleging an inability to work beginning January 28, 2006. (A.R. 298-300.) After Plaintiff's application was denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (A.R. 141-142.) On July 9, 2009, Plaintiff appeared and testified before ALJ Edward D. Steinman. (A.R. 69-94.) On August 31, 2009, the ALJ determined that Plaintiff was not disabled. (A.R. 97-110.) In his decision, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since January 28, 2006, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairment: chronic pain syndrome (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a); except, [s]he would be limited to no climbing of ropes, ladders or scaffolds

and would need occasional rest. Additionally, [s]he would need to avoid even moderate exposure to noise, fumes, odors and concentrated exposure to workplace hazards.

6. The claimant is capable of performing past relevant work as an administrative assistant. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 28, 2006 through the date of this decision (20 CFR 404.1520(f)).

(Id.)

On September 2, 2009 Plaintiff requested a review of the ALJ's decision by the Appeals Council. (A.R. 231.) On August 12, 2010, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's August 31, 2009 decision, and remanded the case for further development.[1/] (A.R. 113-116.) A second hearing was held before ALJ Steinman on February 11, 2011. (A.R. 39-68.) The ALJ again found Plaintiff not disabled by decision dated February 25, 2011. (A.R. 18-28.) In his decision, the ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 28, 2006 through her date last insured of December 31, 2010 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: fibromyalgia (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk for 2 hours in an 8-hour workday and sit without limitation, with normal breaks every two hours. She can occasionally stoop, kneel, bend, crouch and crawl. She can climb stairs but not ropes, ladders or scaffolds. She

---

1. The Appeals Council ordered the ALJ to obtain additional evidence and evaluate all of the physical impairments in order to complete the administrative record; if warranted, obtain additional testimony from a medical expert; give further consideration to the claimant's residual functional capacity ("RFC"); and, obtain testimony from a vocational expert. (A.R. 115.)

should not be exposed to heights and should not balance. She has no manipulative limitations with the upper extremities. She can occasionally perform neck motion and she should avoid extreme motions of the neck. Her head should be held in a comfortable position when not moving. She can maintain a fixed head position for 15-30 minutes at a time, which is considered occasional, up to 1/3 of the 8 hour workday.

6. Through the date last insured, the claimant was capable of performing past relevant work as a dispatcher and an administrative assistant, but the claimant could not perform in her past relevant work in a supervisory position. This work did not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 28, 2006, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(f)).

(A.R. 23-27.)

Plaintiff requested a review of the ALJ's decision by the Appeals Council which was denied on August 10, 2012, making the ALJ's decision the final determination of the Commissioner of Social Security for purposes of judicial review. (A.R. 1-6.) Plaintiff filed the instant complaint on September 27, 2012 [Doc. No. 1], and Defendant filed an answer on December 10, 2012. [Doc. No. 7.] Plaintiff filed a Motion for Summary Judgment [Doc. No. 12], and Defendant filed a Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment. [Doc. No. 15, 16.]This Report and Recommendation addresses both motions pending before it.

## III.

## ADMINISTRATIVE RECORD

**A. Medical Evidence**

### 1. Treating Physicians

**Reuben Farris, M.D. - Plaintiff's Primary Physician**

Reuben Farris, M.D., treated Plaintiff since 2002. (A.R. 499.) On October 26, 2005, Plaintiff stated to Dr. Farris that she was recently treated in the emergency room and was having more back and neck pain. (A.R. 493.) Dr. Farris' notes and comments are mostly illegible, however he did write that Plaintiff suffered from

ovarian cyst, irritable bowl syndrome "IBS", depression, and chronic back pain. (Id.) On January 20, 2006, Plaintiff complained to Dr. Farris of neck and shoulder pain. (Id.) On February 21, 2006  Dr. Farris diagnosed Plaintiff with IBS and fibromyalgia. (A.R. 490.) On May 10, 2006, Dr. Farris wrote a letter stating that he was treating Plaintiff for lumbar spinal stenosis, chronic cervical pain, right shoulder pain, and fibromyalgia. (A.R. 521.) He also noted that Plaintiff suffered from depression and IBS. (Id.) Dr. Farris concluded that Plaintiff is permanently disabled and therefore was unable to work. (Id.) Plaintiff was also seen by Dr. Farris in October 2006, however Dr. Farris' notes are illegible. (A.R. 608.)

On May 14, 2007, Plaintiff complained of back pain and depressive symptoms. (A.R. 608.) Again, most of Dr. Farris' findings are illegible, however the examination noted antalgic gait and chronic neck and lumbar pain. (Id.) In a letter dated May 16, 2007, Dr. Farris reported that Plaintiff had increased back pain with walking, sitting, or standing for more than 15 minutes. (A.R. 586.) Plaintiff also had increased neck pain with any physical labor, using a keyboard, writing, driving, and even blow-drying her hair. (Id.) Dr. Farris again opined that Plaintiff was completely and permanently disabled. (Id.)

Dr. Farris completed a report at the request of the Social Security Administration "SSA" on March 12, 2007. (A.R. 583.) Dr. Farris opined that Plaintiff could occasionally lift and carry less than 10 pounds. (Id.) Plaintiff could stand and/or walk for less than 2 hours total and sit for less than 8 hours in an 8-hour workday. (Id.) Dr. Farris noted that Plaintiff could never climb ladders or scaffolds, kneel, crouch, or crawl, and only occasionally climb ramps/stairs and balance. (Id.)

On June 4, 2007, Dr. Farris noted that Plaintiff had continued pain and should see an orthopedist and psychiatrist. (A.R. 631.) X-rays of the cervical and thoracic spine dated June 21, 2007 revealed minimal narrowing of the C4-5 disc. (A.R. 632.) On July 9, 2007, Plaintiff continued to have pain in the shoulders, neck, and

low back radiating to the right calf. (A.R. 631.) On July 25, 2007, Plaintiff reported pain as well as headaches. (A.R. 636.) On July 26, 2007, Plaintiff was given trigger point injections with Kenalog. (A.R. 637.) In a letter dated August 6, 2007, Dr. Farris summarized Plaintiff's medical conditions and opined that she was permanently disabled. (A.R. 706.) Plaintiff was seen for a follow-up and prescribed Skelaxin and Lyrica. (A.R. 711.) On August 8, 2007, Plaintiff reported abdominal pain. (Id.) Plaintiff's abdominal pain persisted at her next visit on August 27, 2007. (A.R. 835.) On September 7, 2007, Plaintiff was seen in the emergency room with similar complaints of abdominal pain. (A.R. 674.)

On March 20, 2008, Plaintiff complained of neck and shoulder pain. (A.R. 944.) Dr. Farris diagnosed Plaintiff with chronic pain/fibromyalgia and refilled her medications. (Id.) On June 17, 2008, Plaintiff reported off and on gastrointestinal symptoms. (A.R. 943.) On May 26, 2009, Plaintiff complained of right shoulder pain. (A.R. 1026.) Dr. Farris noted trigger points in the rhomboid and occipital areas. (Id.) Dr. Farris recommended that Plaintiff begin physical therapy. (Id.) A CT scan of the right shoulder dated June 19, 2009 showed calcification in the insertion of the rotator cuff. (A.R. 1077.) On June 28, 2009, Dr. Farris diagnosed right shoulder bursitis. (A.R. 1073.) On September 11, 2009, Dr. Farris prescribed Cymbalta. (A.R. 1073.)

Dr. Farris saw Plaintiff for her shoulder pain on April 28, 2010. (A.R. 1101.) In a letter dated August 26, 2010, Dr. Farris stated that Plaintiff was disabled as a result of a combination of fibromyalgia, lumbar spinal stenosis with chronic pain, chronic cervical spine pain with radicular symptoms, right shoulder pain with impingement, irritable bowel syndrome, and major depression. (A.R. 1126.) Dr. Farris opined that his findings were consistent with diagnostic studies, including x-rays, CT scans, and MRIs. (Id.) On September 30, 2010, Plaintiff complained of chronic shoulder and neck pain. (A.R. 1119.)

Dr. Farris completed a Multiple Impairment Questionnaire dated November 3,

12-CV-2355-BEN-(PCL)

2010. (A.R. 1133-1140.) Dr. Farris diagnosed fibromyalgia, lumbar spinal stenosis with chronic pain, chronic cervical spine pain with radicular symptoms, right shoulder pain with impingement, irritable bowel syndrom, and major depression. (A.R. 1133.) The diagnoses were based on a bone scan, x-rays of the neck, shoulders, chest, and back, MRIs of the shoulders, neck, and back, rheumatoid testing, sonograms, ultrasounds, colonoscopy, endoscopy, and neurological testing. (Id.) Plaintiff's primary symptoms were flu-like symptoms, extreme fatigue, dizzy spells, overall body aches, headaches, muscle stiffness, joint pain, back and cervical pain, spasms, numbness, sciatic nerve pain, abdominal pain, bloating, heartburn, diarrhea, nausea, insomnia, anxiety, sadness, fatigue, and loss of energy. (A.R. 1134.) Dr. Farris stated that the symptoms and limitations detailed in the questionnaire were present since January 2006. (A.R. 1139.)

Dr. Farris opined that Plaintiff was able to sit less than 1 hour total and stand/walk less than 1 hour total in an 8-hour workday. (A.R. 1135.) She needed to get up and move around every 5 to 10 minutes when sitting and not sit again for 5 to 10 minutes. (A.R. 1135-36.) Plaintiff could never lift or carry even 5 pounds with the right arm and only occasionally 5 pounds with the left arm. (A.R. 1136.) Dr. Farris also stated that Plaintiff could not do any repetitive reaching, handling, fingering, or lifting for more than a few minutes because of severe pain. (Id.) Plaintiff's medications were Cymbalta, Savella, Lidoderm, and Ibuprofen. (A.R. 1137.) Dr. Farris opined that Plaintiff's pain, fatigue, or other symptoms "constantly" interfered with her attention and concentration. (A.R. 1138.) It was noted that depression contributed to her symptoms and limitations due to loss of energy, anxiety, fatigue, and insomnia. (Id.) Dr. Farris estimated that she would be absent from work more than three times a month. (A.R. 1139.)

///

///

**Michael Huntley, M.D. - Physician**

Michael Huntley, M.D., evaluated Plaintiff in a consultation at the request of Dr. Farris on January 22, 2007. (A.R. 574.) Plaintiff reported a long history of neck, shoulder, and occasional right upper extremity pain, as well as chronic low back pain and right lower extremity pain. (Id.) Dr. Huntley evaluated the results from an MRI report that displayed an L3-4 and L4-5 disc bulge, mild stenosis, and bilateral neuroforaminal stenosis at varying degrees. (A.R. 575.) Dr. Huntley diagnosed a history of chronic neck pain, cervical myofascial pain, possible cervical degenerative disc disease versus diks herniation versus fact joint arthropathy, chronic low back pain, and multiple lumbar degenerative disc disease/stenosis with right lumbar radicular symptoms.

**Louis Lurie, M.D. - Orthopedic Surgeon**

Louis Lurie, M.D., reported treating Plaintiff in 1997. (A.R. 545.) On June 19, 2006, Plaintiff complained of low back symptoms, cervical spine symptoms, and bilateral shoulder symptoms. (A.R. 526.) Dr. Lurie recommended Plaintiff see a pain consultant or rheumatologist. (Id.) On August 12, 2008, Dr. Lurie noted that Plaintiff was seen for the first time in three years. (A.R. 933.) Plaintiff reported recurrent low back pain radiating to the right buttock and down the right posterior thigh. An examination revealed pain on forward flexion and positive straight leg raising at 60 degrees on the right and on the left at 70 degrees. (Id.) Dr. Lurie recommended flexion exercises and prescribed Motrin and Darvocet. (A.R. 934.)

**John Taylor, M.D. - Treating Otolaryngologist**

On November 4, 2008, Plaintiff complained of ear and facial pressure bilaterally. (A.R. 1008.) Plaintiff also reported associated symptoms of vertigo, headache, and tinnitus. (Id.) An examination revealed ear wax completely blocking the left ear canal, swelling, and redness. (A.R. 1010.) Dr. Taylor diagnosed sudden hearing loss, abnormal auditory perception, acute sinusitis, and myalgias. (A.R. 1011.) Plaintiff was seen for a follow up 2 days later. (A.R. 916.) Plaintiff reported improved hearing loss and tinnitus, but continued dizziness. (Id.) On November 10,

2008 Plaintiff reported improvement, however by December 8, 2008, Plaintiff complained of worsening tinnitus. (A.R. 1017.) No significant changes were noted at the follow-ups through September 13, 2010. (A.R. 984-85; 1111-14; 1019-21.)

**Adrian Jaffer, M.D. - Examining Rheumatologist**

Adrian Jaffer, M.D., evaluated Plaintiff on January 26, 2010. (A.R. 1085.) Plaintiff complained of generalized body pain, neck ache, low backache, right shoulder pain, bilateral elbow pain, irritable bowel syndrome, and depression. (Id.) An examination revealed a trigger point in the left thumb and obvious mild tendinitis, probable rotator cuff in the right shoulder, 10 to 12 of the 18 fibromyalgia tender points, and mild epicondylitis bilaterally. (A.R. 1086.) Dr. Jaffer diagnosed chronic musculoskeletal pain syndrome (fibromyalgia), multisite tendinitis, bilateral trigger thumbs, irritable bowel syndrome, and depression. (Id.)

**2.     Medical Consultation for Social Security Administration**

**Frederick Close, M.D. - SSA Consultative Examiner**

Frederick Close, M.D., evaluated Plaintiff at the request of the Social Security Administration on May 20, 2007. (A.R. 591.) Plaintiff complained of pain in her neck, back, bilateral knees, and bilateral elbows. (Id.) An examination revealed pain with cervical compression and traction, generalized tenderness in the midline of the spine, and right grip strength weakness. (A.R. 593.) Dr. Close diagnosed chronic strain of the cervical and lumbar spine, mild cervical spondylosis, mild to moderate degenerative disc disease of the lumbar spine with some spinal stenosis at L3-4 and L4-5. (A.R. 594.) He also opined that Plaintiff could sit, stand, and walk at least 6 hours out of an 8 hour workday, lift 50 pounds occasionally and 25 pounds frequently, and could occasionally bend, stoop, crouch, squat, kneel, crawl, and climb. (Id.)

/ / /

**3.     Mental Health Consultation for Social Security Administration**

**Jaga Nath Glassman, M.D. - SSA Consultative Examiner**

Jaga Nath Glassman, M.D., evaluated Plaintiff for the SSA on June 8, 2007. (A.R. 598.) Plaintiff reported having bouts of depression. (A.R. 599.) A mental status examination revealed that Plaintiff appeared in quite a bit of pain. (A.R. 601.) Dr. Glassman diagnosed pain disorder with medical and possible psychological conditions. (A.R. 602.) The doctor opined that she could behave in a socially appropriate manner, get along with others, adapt to some degree of stress and changes, follow complex instructions, and perform at least simple, repetitive tasks. (Id.)

**4. <u>Non-Examining State Agency Medical Consultants</u>**

K.J. Wahl, M.D., reviewed Plaintiff's claim file on August 9, 2007 and opined that she could perform sedentary work except that she could never climb ladders, ropes, or scaffolds, stoop, kneel, crouch, or crawl, and only occasionally climb ramps/stairs and balance. (A.R. 639-42.) Leonard Simpson, M.D., reviewed the file on September 4, 2007 and affirmed Dr. Wahl's opinion except that he recommended changing Dr. Wahl's findings of no stooping, crouching, kneeling, and crawling to occasional. (A.R. 664-65.) Marcia Yee, M.D., reviewed the claim file on January 23, 2008 and affirmed the previous opinion. (A.R. 888-90.)

K.D. Gregg, M.D., reviewed Plaintiff's file on June 26, 2007 and opined that Plaintiff had no severe mental impairments. (A.R. 616.) Alan Schrift, M.D., affirmed the finding that Plaintiff had no sever mental impairments on January 25, 2008. (A.R. 891.)

/ / /

/ / /

/ / /

/ / /

/ / /

**5. <u>Plaintiff's Disability Reports</u>**

Plaintiff completed an undated Disability Report – Adult-Form SSA-3368 – as

part of her initial application for benefits. (A.R. 341-49.) In the report, Plaintiff stated that "lumbar spinal stenosis-chronic vervical pain, right shoulder pain, fibromyalgia and depression" limited her ability to work. (A.R. 342.) Plaintiff stated that she was unable to work as of January 1, 2006. When asked why she stopped working, Plaintiff reported that she couldn't take the pain anymore. (Id.) Plaintiff listed that she previously worked as a customer service representative in the airline industry from October 2002 through January 2006. (A.R. 343.) Plaintiff reported that during her job she stood and climbed for an hour daily. (Id.) The heaviest weight she would carry is 10 pounds. (Id.) Plaintiff listed that she takes the following medications: "Belladoona, Declopeac, Iovastatin, Lidoderm patches, Protonix, Sulindac, Zoloft." (A.R. 347.)

On November 2, 2007, Plaintiff completed a Disability Report Appeal – SSA-3441 –after her initial application was denied. (A.R. 384.) There, she reported that his conditions had worsened since her last report. (A.R. 385.) She stated that the pain in her stomach, neck, shoulder and head were much more severe. (Id.) She reports that as a result of this pain she is unable to do normal every day activities. (Id.) The fibromyalgia makes her fatigued, dizzy and ache. (Id.) She also reports that having IBS causes bloating, spasms, gastric diarrhea and nausea. (Id.) Plaintiff reports being depressed, having insomnia, loss of appetite, fatigue, loss of energy, aches and pains, and irritability. (Id.)

Plaintiff subsequently completed an undated additional appellate Disability Report – Appeal Form SSA-3441. (A.R. 406-412.) There, Plaintiff reported further changes to her conditions. (A.R. 407.) Specifically, Plaintiff reported degenerative spinal pain in her neck and shoulder, constant stomach pain due to IBS and lack of appetite. (Id.) Plaintiff reports new limitations in driving, writing, using the keyboard, sleeping, household chores, sitting, standing, walking or anything repetitive for any length of time. (A.R. 407.) Plaintiff also reports an additional disability of fibromyalgia, which makes her entire body extremely sore and

sensitive. (Id.)

### 6. **Plaintiff's Function Report**

On November 3, 2006, Plaintiff completed a function report. (A.R. 366.) Plaintiff stated her normal day consists of feeding her animals, taking her medication, going on a short walk, doing light chores, and eating. (Id.) Plaintiff reports that she takes several naps and has no energy due to lack of sleep. (Id.) Plaintiff also reports that she watches TV, reads and takes baths. (Id.)

Plaintiff does not have any issues dressing herself, taking a bath, feeding herself and using the toilet. (A.R. 367.) However, Plaintiff reported problems caring for her hair and writing, typing or using the phone. (Id.) She states that she can't do yard work or major cleaning around the house. (Id.)

Plaintiff reports some limitations in getting around town. (A.R. 369.) She states that she is only able to walk 20 minutes a day. (Id.) She is able to drive her car around her home area but is unable to drive for longer distances. (Id.)

Plaintiff reports that her condition affects her ability to lift, walk, sit, stand, use her hands, complete tasks, and concentrate. (A.R. 371.) These limitations are all due to pain. (Id.)

### B. **Administrative Hearing**

### 1. **Plaintiff's Testimony - First Hearing**

On July 9, 2009, before ALJ Edward D. Steinman, Plaintiff testified regarding her medical conditions and consequent limitations. (A.R. 72-88.) Plaintiff testified that she has pain in her neck, and on the right side of her shoulder, arm and hand. (A.R. 74.) Plaintiff explained that she has pain in her stomach due to irritable IBS. (A.R. 75.) Plaintiff also experiences pain at the base of her spine due to degenerative lumbar spinal stenosis. (Id.) She stated that due to this condition she experiences pain that travels from her lower back to her calf. (Id.) Plaintiff testified that she suffers from fibromyalgia because she constantly has pain in her joints, has flu like symptoms, is prone to infections and has cysts growths. (A.R. 76.) Plaintiff

also stated that she has problems with depression although she is not currently seeing a psychiatrist or a psychologist. (Id.) She testified that she is currently taking the following medications: Lovastatin for cholesterol, Skelaxin for the fibromyalgia, Belladonna for her stomach, Tramadol for pain, Oxycodone for back pain and shoulder pain and Lidoderm patches for other pain. (A.R. 76-77.) When asked by the ALJ to describe her pain level on a scale of 1-10, 10 being the most, Plaintiff stated her pain ranged from 6-10. (Id.)

Plaintiff then described her physical limitations during her testimony. She stated that she could lift and carry 10 pounds using her left arm and about a pound using her right arm. (A.R. 78.) She stated that she has trouble using her hands and could only hold something for a couple of minutes. (Id.) Plaintiff explained that she can't sit or stand for too long and needs to alternate every 10 minutes. (Id.)

Plaintiff also testified about her daily activities and functions. (A.R. 81.) Plaintiff stated that she does not cook and prepare her own meals. (Id.) She explained that when she has difficulties with her back, she has problems dealing with her personal hygiene. (Id.) Plaintiff testified that she is able to drive a few times a week and usually stays within a five mile radius because "she can't keep her arms on the steering column" for long period of time. (Id.) When asked by the ALJ what she does on a typical day, Plaintiff responded that she does "physical therapy at home, takes a bath, eats breakfast and then play[s] the rest of the day by ear." (A.R. 81-82.) Plaintiff stated that she sleeps approximately 14 hours a day. (Id.) Plaintiff testified that she tries to get outside and walk from time to time walking three blocks in approximately 10-15 minutes. (Id.)

When asked by the ALJ if Plaintiff would like to add anything else to her testimony, Plaintiff emphasized that due to her fibromyalgia, she is very prone to infections. (A.R. 84.) These infections range from ear, bladder and urinary infections. (Id.) Plaintiff also emphasized her problems with ovarian cysts. (A.R. 85.)

Plaintiff was then questioned by her attorney, Ms. Duchene, regarding her IBS, hearing, and ability to focus. (A.R. 85.) Plaintiff testified that due to her IBS she has to use the restroom over a half dozen times. (Id.) She stated that due to her ear infections she has lost 20 percent of her hearing. (A.R. 86.) Plaintiff also testified that she has problems focusing on things such as television shows and gets headaches very often. (A.R. 87.)

## 2. <u>Vocational Expert's Testimony- First Hearing</u>

On July 9, 2009, before ALJ Edward D. Steinman vocational expert Ms. Gloria Lasoff testified regarding Plaintiff's capacity to work, despite her conditions. (A.R. 88.) The ALJ's first hypothetical presented a "DDS assessment of degenerative disk disease of the lumbar spine chronic syndrome; lift on occasion 10 pounds, frequently 10 pounds; stand and walk two of eight; sit six of eight; no ropes, ladders, or scaffolds; the rest of the postural's occasional; avoid moderate exposure to hazards; 21F, DDS concluded that the mental disorder, the chronic pain disorder was non-severe" and posed the question, assuming the ALJ finds the DDS to be appropriate in its interpretation of the record, would she be able to do any of her former work? (A.R. 88.) In light of the DDS report, and taking into account Plaintiff's condition, Ms. Lasoff testified that Plaintiff could work as a dispatcher and administrative assistance. (Id.) Next the ALJ asked Ms. Lasoff regarding the documentation from Dr. Farris. (Id.) Dr. Farris treated the Plaintiff on several occasions and concluded that she was permanently disabled. (Id.) The ALJ then asked if he was to accept Dr. Farris' opinion, would the Plaintiff be able to work and Ms. Lasoff stated no. (Id.) The ALJ's next hypothetical considered an orthopedic consultative exam administered in May of 2007 which indicated pain in the neck, back, bilateral knees, bilateral elbow, with a diagnosis of chronic strain of the lumbar spine, mild cervical spondylosis, mild to moderate degenerative disk disease lumbar spine with spinal stenosis at L3-4 and L4-5. (A.R. 89.) The examiner stated Plaintiff could lift on occasion 50 pounds, frequently 25 pounds;

sit, stand, and walk six of eight; no assistive device needed. (Id.) The ALJ asked

Ms. Lasoff that in light of this medium work assessment would Plaintiff be able to

perform her prior work, Ms. Lasoff's answer was yes. (Id.) The ALJ's next

hypothetical assumed that the Plaintiff could lift and carry 20 pounds on occasion,

frequently 10 pounds; sit, stand, and walk six of eight; occasional postural; no

ladders, ropes, or scaffolds; avoid concentrated exposure to vibration, hazard,

noise, and fumes, and odors; and the mental impairment remains non-severe. Given

those limitations, the ALJ asked Ms. Lasoff whether Plaintiff could perform her

prior work as a dispatcher and/or customer service representative, Ms. Lasoff

stated that she could perform those two jobs as well as a supervisor job. (A.R. 90.)

The ALJ then added the condition of having a restroom nearby and Ms. Lasoff

stated that additional condition would interfere with the dispatcher job but not the

administrative assistant or supervisor job. (Id.) The ALJ's last hypothetical

considered claimant's limitations of lifting with the left arm 10 pounds, with the

right one pound; use hands to manipulation only a couple of minutes, stand within

minutes, sit within minutes; no cane or crutch; excessive sleep during the day,

sporadically all day; and her conclusion that she's not able to work full-time.

Taking those conditions into account, the ALJ asked Ms. Lasoff if Plaintiff could

work in any capacity and Ms. Lasoff replied that she could not. (A.R. 91.)

Plaintiff was also questioned by her attorney, Ms. Duchene, regarding the

hypotheticals posed. (Id.) Ms. Duchene posed to Ms. Lasoff that if the individual

needs to take two unscheduled 15-minute breaks throughout the day, in addition to

scheduled breaks and lunch, would there be any of her past work that she could

perform. (A.R. 92.) Ms. Lasoff stated that she could perform the supervisory job,

possibly the administrative assistant, but not the dispatch job. (Id.)

### 3. **Medical Expert's Testimony- Second Hearing**

On February 11, 2011, before ALJ Edward D. Steinman medical expert Dr.

Samuel Landau testified regarding Plaintiff's impairments and limitations. (A.R.

44.) Dr. Landau testified that he couldn't find any non-psychiatric diagnoses that were medically severe, but that Plaintiff has some minor neck and lumbar spine degenerative changes which are age related, and multi system complaints blamed on fibromyalgia syndrome. (Id.) When asked by the ALJ whether Plaintiff has a basis for the fibromyalgia diagnosis, Dr. Landau responded that she has a basis for fibromyalgia since her complaints , including IBS, cognitive problems, and other vague manifestations are consistent with it. (A.R. 44-45.) However, Dr. Landau did note that there were no objective findings to conclusively support a listed impairment due to fibromyalgia. (Id.)

Dr. Landau then testified that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally. (A.R. 45.) He stated the Plaintiff could walk two out of eight hours a day and had no limitation to sitting with normal breaks every two hours. (Id.) He also testified that Plaintiff can occasionally stoop, bend, kneel, crouch, and crawl. (Id.) Dr. Landau commented that she can climb stairs, but not ladders, ropes, work at heights, or balance. (A.R. 46.) He stated that Plaintiff has no manipulation limitations but should avoid extreme motions to the neck. (A.R. 47.) He also added that her head should be held at a comfortable position at times when she's not moving. (Id.) He stated that Plaintiff can maintain a fixed head position for 15 to 30 minutes at a time occasionally. (Id.)

Plaintiff's attorney Ms. Duchene posed additional questions to Dr. Landau after the ALJ. (A.R. 48.) Ms. Duchene first asked Dr. Landau whether fibromyalgia would cause chronic fatigue. (Id.) Dr. Landau replied it could but also stated that "the problem with a fibromyalgia diagnosis in this particular case is that you also have a psychiatric diagnosis which can also cause all of these symptoms." (A.R. 48-49.) Dr. Landau continued to state that since there is no objective evidence for the diagnosis of fibromyalgia, IBS or any of these other conditions she has, "he is unsure if the symptoms are from her depression or the symptoms are from the fibromyalgia." (A.R. 49.) He explained that he only evaluated the

physical diagnosis and physical aspects of the medical records and based on his finds the Plaintiff would be able to function within the limitations he stated previously. (A.R. 50.)

### 4. __Plaintiff's Testimony - Second Hearing__

On February 11, 2011, before ALJ Edward D. Steinman, Plaintiff testified regarding her previous employment. (A.R. 64-66.) Plaintiff stated that in regards to her job as a customer service representative, she had no contact with the general public, sat at a desk, answered phones and typed conversations. (A.R. 64.) She stated that she always had to be available to the public on the phone and that she rarely went on breaks. (Id.) In regards to her job as a dispatcher, she had little movement but handled a high call volume. (A.R. 65.) Plaintiff emphasized that all of her previous jobs were stationary where she rarely walked or stretched. (Id.)

### 5. __Vocational Expert's Testimony- Second Hearing__

Following testimony from the medical expert, Dr. Landau, the ALJ posed an additional hypothetical question to vocational expert Dr. Lasoff. (A.R. 55.) The ALJ asked if he accepted the limitations of Dr. Landau "lifting 20 pounds occasionally, 10 pounds frequently; stand and walk two of eight; sit no limitations with normal breaks every two hours; occasional stoop, kneel, bend, crouch, and crawl; can climb stairs, but no ropes, ladders, or scaffolds; no heights and no balancing; no manipulative limitations with the upper extremities; occasional neck motion; avoid extreme motions of the neck; head should be held in a comfortable position when no moving; maintain fixed head position 15-30 minutes at a time; occasionally up to a third of the day" would the Plaintiff be able to return to her prior work. (A.R. 56.) Dr. Lasoff replied that Plaintiff would be able to return as a dispatcher and administrative assistant but not the supervisory position. (Id.)

The ALJ then commented on Dr. Farris' November 2010 assessment which states that Plaintiff suffers from numerous chronic conditions and her pain persists despite treatment. (Id.) Dr. Farris states that Plaintiff has "no ability to lift with the

right upper extremity, except occasionally up to 5 pounds with the left upper extremity; that she can sit zero to one hour; stand zero to one hour; can't do anything repetitive more than a few minutes, keeping body parts in the same position causes severe pain; marked occlusion use of the right upper extremity; significantly, but not limited the use of the left upper extremity; would miss more than three days per month; and no postural movements based." (A.R. 56-57.) The ALJ asked Dr. Lasoff if Plaintiff would be able to sustain work given these limitations and Dr. Lasoff replied stated no. (A.R. 57.)

Plaintiff's attorney Ms. Jessica Cook posed additional questions to Dr. Lasoff after the ALJ. (Id.) She asked Dr. Lasoff to describe how the head limitations imposed by Dr. Landau (having her head in a fixed position for only 15-30 minutes) would affect her ability to work as an administrative assistant or dispatcher. (Id.) Dr. Lasoff stated that due to the nature of job Plaintiff would not be sitting in a fixed position for 15-30 minutes and would be answering phones, sitting at a computer, typing, writing, computer projects. (A.R. 62.)

## C.  ALJ Decision

### August 2009 Decision

On August 31, 2009, ALJ Edward D. Steinman sought to determine whether Plaintiff was disabled under section 216(i) and 223(d) of the Act. (A.R. 100.) After determining that Plaintiff met the insured status requirements of the Act through December 31, 2010, the ALJ ruled that Plaintiff was not disabled as defined by the Act from January 28, 2006 through August 31, 2009, the date of this decision. (110.)

The ALJ found that although Plaintiff suffered from "chronic pain syndrome" Plaintiff's condition did not meet or medically equal any of the criteria set forth in the Listing of Impairments in Appendix 1. (A.R. 104.) Specifically, the ALJ found that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the limitation of no climbing of ropes, ladders

or scaffolds and would need to occasionally rest. (Id.) Additionally, Plaintiff would need to avoid even moderate exposure to noise, fumes, odors and concentrated exposure to workplace hazards. (Id.) In making this finding, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. (Id.) The ALJ also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. (Id.)

The ALJ reviewed Plaintiff's medical history beginning with the observations of treating physician Dr. Louis Lurie, M.D. (A.R. 105.) Dr. Lurie noted that the Plaintiff had some low back symptoms, cervical spine symptoms and bilateral shoulder symptoms; however, the examination was entirely unremarkable, as were her x-rays. (Id.) The ALJ also reviewed the evaluations of neurologist Dr. Bakst; orthopedic surgeons, Dr. Rosenfeld and Dr. Lurie; chiropractor, Dr. Friday; and internists, Dr. Weiner and Dr. Farris; all of whom found minimal findings with respect to Plaintiff's reports of chronic neck, shoulder, and occasional right upper extremity pain as well as chronic pain in her lower back. (Id.) The ALJ subsequently spent a significant portion of his decision reviewing the findings of Plaintiff's treating family physician, Reuben Farris, M.D. (A.R. 106.) Dr. Farris reported that he had treated Plaintiff for several years for chronic medical problems including: lumbar spinal stenosis, chronic cervical pain, right shoulder pain, fibromyalgia, IBS, and depression. (Id.) Dr. Farris completed a medical source statement in which he opined that Plaintiff would be limited to lifting and carrying no more than ten pounds at a time, with equivalent limitation on pushing and pulling. (Id.) Plaintiff can sit for less than six hours in an eight hour workday and stand and/or walk less than two hours in an eight hour workday. Furthermore, she could occasionally climb ramps and stairs and balance, but never climb ladders or scaffolds and never kneel, crouch, or crawl. (Id.) Dr. Farris ultimately concluded

that the Plaintiff was totally and permanently disabled due to her conditions. (Id.) The ALJ acknowledged the opinions expressed by Dr. Farris however, due to inconsistencies in the record, the ALJ determined that controlling weight could not be granted to Reuben Farris, M.D. (20 CFR 404.1527(d) and SSR 96-2p.) The ALJ stated that while Dr. Farris opined in multiple letters that the claimant was permanently disabled and unable to perform any work activity; there have been reports by multiple specialists, including orthopedic surgeons, neurologists, pain management specialists; none of whom opined that the Plaintiff was unable to perform any work activity. (Id.)

Using the testimony of vocational expert Gloria J. Lasoff, M.A., the ALJ found that Plaintiff would be able to perform her past relevant work as an administrative assistant, both as she actually performed the duties and as they are generally performed in the national economy. (A.R. 110.)

The Plaintiff, therefore, was found not to be disabled under the Act from January 28, 2006 through the date of his decision on August 31, 2010. (Id.)

**February 2011 Decision**

On February 25, 2011, ALJ Edward D. Steinman evaluated Plaintiff's case on remand from the Appeals Council. (A.R. 21.) In its remand order, the Appeals Council noted that in the ALJ's prior decision, the issue of the Plaintiff's ability to stoop and crouch was not sufficiently discussed nor was its relationship to her ability to perform her past relevant work sufficiently discussed either. (Id.) The Appeals Council directed the ALJ to obtain additional evidence and evaluate all the physical impairments in order to complete the administrative record and then, if necessary, obtain a consultative examination and a medical source statement regarding the Plaintiff's ability to perform work related activities despite her physical impairments. (Id.) Furthermore, if warranted, the ALJ is to obtain a medical expert to testify, consider the Plaintiff's maximum residual functional capacity, and obtain supplemental vocational evidence sufficient to allow

comparison between the Plaintiff's residual functional capacity and the mental and physical demands of her past relevant work.

The ALJ noted in his decision that he incorporated the discussion of the medical records, the Plaintiff's credibility, and the vocational expert's testimony, as they are written in the August 31, 2009 decision. (A.R. 21.) Thereafter ALJ again sought to determine whether Plaintiff was disabled under section 216(i) and 223(d) of the Act. (A.R. 22.) After determining that Plaintiff met the insured status requirements of the Act through December 31, 2010, the ALJ ruled that Plaintiff was not disabled as defined by the Act from January 28, 2006 through the date last insured. (Id.)

The ALJ found that Plaintiff has the severe impairment of fibromyalgia. (A.R. 24.) The ALJ then concluded that Plaintiff's impairment or combination of impairments did not meet or medically equal any of the criteria set forth in the Listing of Impairments in Appendix 1. (Id.)

The ALJ concluded that after careful consideration of the entire record, Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently. (Id.) Plaintiff can stand and walk for two hours in an eight hour workday and sit without limitation, with normal breaks every two hours. (Id.) Plaintiff can occasionally stoop, kneel, bend, crouch and crawl. (Id.) Plaintiff can also climb stairs but not ropes, ladders or scaffolds. (Id.) Plaintiff should not be exposed to heights and should not balance. (Id.) The ALJ also noted that Plaintiff has no manipulative limitations with the upper extremities and can occasionally perform neck motions but should avoid extreme motions of the neck. (Id.) Plaintiff's head should be held in a comfortable position when not moving otherwise Plaintiff can maintain a fixed head position for 15-30 minutes at a time. (Id.)

In considering the Plaintiff's symptoms, the ALJ followed a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment. (Id.) Second, once an underlying

physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine the extent to which they limit the Plaintiff's functions. (A.R. 25.)

In this case, the Plaintiff alleges disability due to pain, depression and the side effects of her medication. (Id.) In evaluating these allegations, the ALJ noted the opinions and observations of Dr. Landau, an internal medicine physician. (Id.) Dr. Landau testified that Plaintiff's vague manifestations and complaints are consistent with a diagnosis of fibromyalgia. (Id.) Dr. Landau also explain that despite these limitations Plaintiff would not be precluded from work.[2] Given these findings, the ALJ after careful consideration of the evidence, found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. (Id.) The ALJ also reconsidered the assessments of Dr. Farris, Plaintiff's family practice physician and decided to give his assessment of disability very little weight compared to Dr. Landau. (A.R. 26.) The ALJ reasoned that Dr. Farris' opinions are not consistent with the medical record as a whole, nor with the medical expert's testimony and the Plaintiff's presentation at the hearings. (Id.) The ALJ noted that although Dr. Farris offered a more recent opinion on August 26, 2010 stating that Plaintiff was disabled due to her multiple diagnoses and chronic conditions, he did not set out a function-by-function limitation and did not have the expertise to

---

2. Dr. Landau stated that with regard to her work related limitations, the claimant can lift and carry 10 pounds frequently and 20 pounds occasionally. She can stand and walk for 2 hours in an 8-hour workday with breaks every 2 hours. She can sit without limitation. She can occasionally stoop, kneel, bend, crouch and crawl. She can climb stairs but cannot climb ladders, ropes or scaffolds and should not balance or be exposed to heights. She is restricted to occasional neck motion but must avoid extremes of neck motion. When her next is not moving, it should be in a comfortable position. She can maintain her head in a fixed position for 15-30 minutes at time and she can do that occasionally, i.e., up to 1/3 of the 8-hour workday. She has no manipulative limitations with her upper extremities.

evaluate Plaintiff's limitations. (A.R. 27.) As a result, the ALJ rejected this assessment from Dr. Farris. (Id.) The ALJ also considered the most recent November 3, 2010 assessment from Dr. Farris. (Id.) In that assessment, Dr. Farris did include specific function-by-function limitations for the Plaintiff, however the ALJ found those limitations so extreme that it would be hard for the Plaintiff to function at all or perform the activities of daily living and self-care that she admits she accomplishes if they were accurate. (Id.) As a result, the ALJ rejected this assessment from Dr. Farris. (Id.)

Using the testimony of vocational expert Ms. Lasoff, the ALJ found that Plaintiff is able to perform her past relevant work as a dispatcher and as an administrative assistant. (Id.) Ms. Lasoff stated that the Dictionary of Occupational Titles and other tests used in the Social Security disability process state that no stooping is required in either of these jobs. (Id.) Ms. Lasoff noted that stooping was bending at the waist and if any stooping was required at either of these jobs, it would be at most, "very occasional." (Id.) Given these findings, the ALJ accepted the vocational expert's testimony and found that the Plaintiff was able to perform it as generally performed. (Id.) The Plaintiff, therefore, was found not to be disabled under the Act from January 28, 2006, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(f)).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# IV.

## STANDARD OF REVIEW

To qualify for disability benefits under the Social Security Act, an applicant

must show that: (1) He suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. See 42 U.S.C.A. § 423 (d)(1)(A), (2)(A) (West 2004).  An applicant must meet both requirements to be "disabled."  Id.

## A. Sequential Evaluation of Impairments

The Social Security Regulations outline a five-step process to determine whether an applicant is "disabled." The five steps are as follows: (1) Whether the claimant is presently working in any substantial gainful activity.  If so, the claimant is not disabled.  If not, the evaluation proceeds to step two. (2) Whether the claimant's impairment is severe. If not, the claimant is not disabled.  If so, the evaluation proceeds to step three.  (3) Whether the impairment meets or equals a specific impairment listed in the Listing of Impairments.  If so, the claimant is disabled.  If not, the evaluation proceeds to step four.  (4) Whether the claimant is able to do any work she has done in the past.  If so, the claimant is not disabled.  If not, the evaluation proceeds to step five.  (5) Whether the claimant is able to do any other work.  If not, the claimant is disabled.  Conversely, if the Commissioner can establish there are significant number of jobs in the national economy that the claimant can do, the claimant is not disabled.  20 CFR § 404.1520; see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

/ / /

/ / /

/ / /

## B.  Judicial Review

Sections 206(g) and 1631(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of the Commissioner's final agency decision.  42

U.S.C.A. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Commissioner's final decision should not be disturbed unless: (1) the ALJ's findings are based on legal error or (2) are not supported by substantial evidence in the record as a whole. Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Vasquez v. Astrue, 547 F.3d 1101, 1104 (9th Cir. 2008) (quoting Andrews, 53 F.3d at 1039). Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed. Id. (citation and quotations omitted).

Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C.A. § 405(g). This matter may also be remanded to the Social Security Administration for further proceedings. Id. Furthermore, "[a] decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

/ / /

/ / /

/ / /

/ / /

# V.

# DISCUSSION

Plaintiff argues that the ALJ erred in denying her application on two grounds.

[Doc. No. 12-1, at 14-21.] First, Plaintiff argues the ALJ erred when he failed to follow the treating physician rule by rejecting the opinions from her treating physician, Dr. Farris. [Doc. No. 12-1, at 14.] Second, Plaintiff argues the ALJ's finding that her subjective testimony is not credible lacks the support of substantial evidence. [Doc. No. 12-1, at 18.] This Court addresses each of Plaintiff's arguments in turn.

**A. The ALJ's evaluation of treating medical source opinion, Reuben Farris, M.D.**

Plaintiff argues the ALJ impermissibly rejected the medical opinion of Plaintiff's treating physician, Dr. Farris. [Doc. No. 12-1 at 14-18.] The Defendant argues the ALJ provided specific and legitimate reasons, supported by substantial evidence, to reject Dr. Farris' testimony. [Doc. No. 15-1 at 2-7.]

As a general rule, "[a] treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) citing Social Security Ruling ("SSR") 96–2p. Furthermore, a treating physician's opinion generally carries more weight than an examining source, and an examining source carries more weight than a non-examining source opinion. Lester v. Chater, 81 F.3d 821 (9th Cir. 1995).

Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). The ALJ must do more than offer his conclusions, he must set forth his own interpretations and explain why they, rather than the doctors, are correct. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

making findings. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989).

Lastly, 20 C.F.R. § 404.1527(c)[3/], outlines how medical opinions are to be properly weighed by the ALJ. Factors such as examining relationship, treatment relationship, supportability, consistency, and specialization are to be used in determining how much weight a medical opinion is to receive. See 20 C.F.R. § 404.1527(c)-(d).

In this case, the ALJ after a discussion of the medical evidence of record, including Dr. Farris' assessments of functional limitations, stated that he gave "very little weight" to the opinions of Dr. Farris.[4/] (A.R. 26-27, 106-07.) The ALJ found the opinions of Dr. Farris "not consistent with the record as a whole, nor with the medical expert's testimony and the claimant's presentation at the hearings." (A.R. 27.) Specifically, despite Plaintiff undergoing evaluation and treatment from several treating and consultative medical sources, Dr. Farris, Plaintiff's family practice physician, was the only doctor to assess disabling functional limitations. (A.R. 106, 583, 706, 1126, 1133-40, 1192.) Dr. Farris assessed limitations purportedly associated with orthopedic, rheumatologic, and psychological impairments. However, despite associating Plaintiff's disability with an underlying orthopedic condition, Plaintiff's treating orthopedic surgeon, Louis Lurie, M.D., found few objective findings to support her pain complaints. (A.R. 932-33.) In January 2006, Dr. Lurie noted the physical examination was "entirely unremarkable, as are her x-rays" and the films showed "no evidence of any significant disease." (A.R. 932.) On August 2008, Dr. Lurie reviewed x-rays and

---

3. This section provides guidance on how the ALJ is to weigh medical opinions. Specifically this section states "When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"

4. The ALJ incorporated the discussion and findings pertaining to medical source opinions that he made in his prior, August 31, 2009, hearing decision. Although the ALJ's prior decision was vacated and reversed by the Appeals Council, the Appeals Council ordered remand for further development in regards to Plaintiff's ability to stoop and crouch, and the effect of such postural limitations on the occupational base. (A.R. 113-15.) See <u>Alsyouf v. Astrue</u>, 2013 WL 327794, *12 (C.D. Cal. 2013).

found that they showed well-maintained disc spaces, with only "mild" degenerative disease. (A.R. 933.) The ALJ also considered several diagnostic studies associated with Plaintiff's orthopedic condition. (A.R. 586, 706.) These tests revealed a normal abdominal ultrasound, a normal CT scan of Plaintiff's cervical spine, and an MRI of the cervical spine that showed only a 2mm disc bulge with no contracting or impingement on the spinal cord. (A.R. 1034, 1070, 1074.) Frederick Close, M.D., examined Plaintiff and found that she had a normal gait, normal range of motion in her hands, arms, and legs, with normal sensory and reflexes, and grip strength ranging from 30 to 55 pounds. (A.R. 593-94.) Adrian Jaffer, M.D., a specialist in the field of rheumatology, also commented on Plaintiff's fibromyalgia condition opining that Plaintiff's pain and other symptoms could improve by 30-40% on a treatment regimen. (A.R. 26, 1084.) These clinical findings undermine Dr. Farris' assessment of permanent disability based on their minimal findings.

Furthermore, Dr. Farris' assessed limitations on his belief that Plaintiff suffered from "major depression", however the record is devoid of findings that support this conclusion. (A.R. 1126, 103.) During cognitive evaluations Plaintiff appeared animated, exhibited a responsive mood, and did not exhibit evidence of significant sadness, depression, anxiety, or agitation. (A.R. 601.) The examining psychiatrist, Jaga Nath Glassman, M.D., opined that from a psychiatric perspective, Plaintiff appeared capable of behaving in a socially appropriate manner, getting along adequately with others, adapting to some degree of stress and changes in a workplace setting, following simple and complex instructions, and maintaining concentration. (A.R. 103, 602.) These psychiatric findings, which contradict Dr. Farris, undermine his opinion that Plaintiff's symptoms interfered with her attention and concentration. (A.R. 26, 1192.)

The ALJ concluded that Dr. Farris did not have expertise in gauging Plaintiff's mental capacity, and his opinion deserved little weight to the extent Dr. Farris

attempted to assess her mental limitations. (A.R. 27.) The ALJ in his decision provides three reasons for rejecting Dr. Farris' opinions. First, he states that Dr. Farris' opinions are not consistent with the medical record as a whole, nor with the medical expert's testimony and the Plaintiff's presentation at the hearings. (A.R. 27.) Second, the ALJ states that he found Dr. Farris to not have the expertise, as a family practice physician, to evaluate Plaintiff's more complicated limitations with certain specificity. (Id.) Third, the ALJ states that Dr. Farris' listed limitations are so extreme that it would be hard for the Plaintiff to function at all or perform the activities of daily living and self-care that she admits she accomplishes. (Id.)

After reviewing the entire medical record, this Court finds it was reasonable for the ALJ to conclude that Dr. Farris' opinion deserved little weight given the record as a whole. As stated by the Ninth Circuit, an ALJ may not reject the opinion of a treating physician without providing "specific and legitimate reasons" supported by substantial evidence in the record. Embrey, 849 F.2d 421 (9th Cir. 1988). An ALJ is also required to "set out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d 751 (9th Cir. 1989.) The ALJ conformed to these obligations by discussing the substantial medical evidence that contradicted Dr. Farris' opinions from various treating and non-treating physicians in his decision and ultimately deciding to reject Dr. Farris' opinion. (A.R. 21-27.) The ALJ used these contradictions as a basis for his findings. (Id.) Accordingly, this Court finds the ALJ's decision free of legal error.

/ / /

/ / /

**B. The ALJ's evaluation of the Plaintiff's subjective testimony**

Plaintiff argues the ALJ impermissibly rejected her subjective symptom testimony. [Doc. No. 12-1 at 18-21.] The Defendant argues the ALJ provided specific and legitimate reasons, supported by substantial evidence, to reject

Plaintiff's subjective complaints [Doc. No. 15-1 at 7-10.]

If a claimant has met his burden of producing objective medical evidence of his impairments, an ALJ can reject the claimant's subjective complaints by expressing clear and convincing reasons for doing so. Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). In weighing a claimant's credibility, the ALJ may consider the following factors: 1) his reputation for being honest; 2) inconsistencies in the claimant's testimony; 3) inconsistencies in the claimant's conduct; 3) daily living activities; 4) his work record; and 5) physician's testimony concerning the symptoms alleged. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). In rejecting Plaintiff's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). "The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001). However, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." Thomas, 278 F.3d at 959.

Here, the ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" her statements concerning the intensity, persistence, and limiting effects of these symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (A.R. 25.) As with his evaluation of the medical opinion evidence, the ALJ incorporated by reference his credibility findings from the August 2009 hearing decision.[5] (A.R. 26, 107-08.) These findings were not at issue in the Appeals Council reversal. (A.R. 111-16.)

The ALJ found Plaintiff not credible for several reasons including: (1) the

---

5. Although the Appeals Council reversed the ALJ's initial decision, it was remanded as to the issue of kneeling and stooping. Accordingly, this Court finds no error in incorporating findings regarding Plaintiff's credibility determination. See Alsyouf, 2013 WL 327794, *12.

reasons set forth in his first decision; (2) because in one note Plaintiff stated she was retired but not retired due to her medical condition; (3) her complaints of dizziness and tinnitus improved with treatment; (4) an MRI of the brain was unremarkable; (5) examinations in May and June 2009 did not find significant abnormalities; (6) Dr. Jaffer stated that treatment "could" result in 30-40% improvement; (7) treatment was conservative; (8) there were no cognitive limitations; (9) Dr. Landau testified that the complaints were vague and age appropriate; (10) there were no hospitalizations; and (11) Plaintiff attended and participated in her hearing. (A.R. 26.) These findings, when taken together, significantly contradict and undermine Plaintiff's testimony.

As noted by the ALJ, despite Plaintiff's complaints, she exhibited normal gait, normal range of motion in her legs, arms, and hands, and grip strength of 55 pounds in her left hand, and 30 pounds in her right hand. (A.R. 26) The ALJ found that Plaintiff's reported level of activity directly contradicted her allegations of extreme dysfunction. (A.R. 108.) See Valentine v. Commissioner, Soc. Sec. Admin., 547 F.3d 685, 693 (9th Cir. 2009) (finding that the ALJ properly considered the claimant's activities in rejecting his credibility; although the claimant's activities did not suggest he could return to his past work, they did demonstrate that the claimant had greater functional capacity than he acknowledged in his written statements and testimony). Plaintiff testified at the hearing that she could only lift a pound or two with her right hand, sit down for 10 minutes, and stand for 10 minutes, however, her daily activities suggested that she required greater physical strength and stamina. (A.R. 366-69, 575, 599.) Specifically, Plaintiff reported that she performed light household chores, including dishes, dusting, laundry, fed and cared for her pets, ran errands, and walked around the block for exercise everyday for 20 minutes. (Id.) The ALJ correctly assessed Plaintiff's credibility in his final determination. Thomas, 278 F.3d at 959.

The ALJ also noted the conservative nature of Plaintiff's treatment. (A.R. 26.) (20 C.F.R. § 404.1529(c)(3)(v) (an ALJ may consider the conservative nature of a claimant's treatment in evaluating the impairment's limiting effects); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (upholding ALJ's finding that "conservative treatment" suggested "a lower level of both pain and functional limitation"). The record reflects that Plaintiff was not interested in treating her pain with medications and expressed disinterest in participating in a non-invasive cognitive and behavioral treatment approach, which would have utilized biofeedback, relaxation, and aquatic therapy. (A.R. 108, 575.) Plaintiff's failure to participate in any of these recommended pain treatment programs undermine Plaintiff's allegations of extreme pain and dysfunction. (Id.) See SSR 96-7p (an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"); 20 C.F.R. § 404.1530(b) ("if you do not follow the prescribed treatment without a good reason, we will not find you disabled"); Bunnell, 947 F.2d at 346 (9th Cir. 1991) (A "relevant" grounds for rejecting credibility may be an "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment'").

Furthermore, the ALJ noted that examination findings and diagnostic evidence did not support her allegedly disabling pain and dysfunction. (A.R. 26, 107-08.) Diagnostic x-rays, MRIs and CT scans did not reveal any significant orthopedic impairment that could be associated with Plaintiff's complaints of pain associated with her reported spinal stenosis. (A.R. 108, 342.)

As outlined above, the ALJ cited numerous factors, both medical and those dealing with Plaintiff's credibility, to support his finding that Plaintiff overstated her level of pain and dysfunction. This analysis is sufficient to satisfy the requirement of providing specific and legitimate reasons, supported by substantial evidence. Accordingly, this Court finds the ALJ's decision free from legal error.

**VI.**

**CONCLUSION**

For the reasons set forth above, the Court recommends **DENYING** Plaintiff's Motion for Summary Judgment and **GRANTING** Defendant's Cross-Motion for Summary Judgment.

This Report and Recommendation is submitted to the Honorable Roger T. Benitez, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **September 17, 2013**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **October 15, 2013.** The parties are advised that failure to file objections within the specific time may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATE: August 20, 2013

Peter C. Lewis
United States Magistrate Judge

cc:  The Honorable Roger T. Benitez
     All Parties and Counsel of Record