FILED
13 DEC 10 AM 9:21
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: CXL           DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARONE A. DUNCAN,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | CASE NO. 12-CV-2355-BEN (PCL)<br><br>**ORDER:**<br><br>**(1) ADOPTING REPORT AND RECOMMENDATION**<br><br>**(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(3) GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT, AND**<br><br>**(4) OVERRULING PLAINTIFF'S OBJECTIONS**<br><br>[Docket Nos. 12, 15, 19, 20] |

On September 27, 2012, Plaintiff Sharone A. Duncan commenced an action seeking judicial review of the Commissioner of Social Security's final decision to deny her application for disability insurance benefits. (Docket No. 1). Plaintiff filed a Motion for Summary Judgment (Docket No. 12), and Defendant filed a Cross-Motion for Summary Judgment (Docket No. 15). On August 20, 2013, U.S. Magistrate Judge Peter C. Lewis issued a Report and Recommendation which recommended that this Court deny Plaintiff's Motion for Summary Judgement and grant Defendant's Cross-Motion for Summary Judgement. (Docket No. 19). Plaintiff filed objections to the

Report and Recommendation on September 17, 2013.  (Docket No. 20).

## I. BACKGROUND

A detailed procedural history and summary of the administrative record has been laid out in the thorough Report and Recommendation issued by the Magistrate Judge. As this history is quite lengthy, and is well known to the parties, this Court adopts the Magistrate Judge's description of the administrative record and procedural history. A short summary of relevant events is laid out below.

On September 27, 2006, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*. (AR 298-300). Plaintiff alleged an inability to work beginning January 28, 2006. (AR 300). Plaintiff's application was denied, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (AR 141-42).

Plaintiff appeared before ALJ Edward D. Steinman on July 9, 2009, (AR 69-94), and the ALJ determined that Plaintiff was not disabled on August 31, 2009, (AR 97-110). Plaintiff requested a review of the ALJ's decision by the Appeals Council (AR 231). On August 12, 2010, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further development. (AR 113-16). Specifically, the Appeals Council ordered the ALJ to obtain additional evidence and evaluate all of the physical impairments to complete the administrative record. If warranted, the ALJ was to obtain additional testimony from a medical expert, give further consideration to claimant's residual functional capacity, and obtain testimony from a vocational expert. (AR 114).

Plaintiff appeared at a second hearing before ALJ Steinman on February 11, 2011. (AR 39-68). On February 25, 2011, the ALJ again found the Plaintiff not disabled. (AR 18-28). The Appeals Council denied Plaintiff's request that it review the ALJ's second decision. (AR 1).

Plaintiff seeks judicial review of the Commissioner's final decision. She asserted two grounds for error: 1) failure to follow the treating physician rule by

rejecting the opinions of her treating physician, Dr. Farris, and 2) lack of substantial evidence to support the ALJ's finding that her subjective testimony was not credible. (MSJ at 14, 18). The Magistrate Judge's Report and Recommendation found that the ALJ properly applied the treating physician rule and properly evaluated Plaintiff's credibility when weighing her subjective complaints. Plaintiff objects to both findings. (Obj. at 2).

## II. STANDARD OF REVIEW

To qualify for disability benefits under the Social Security Act, an applicant is required to show two things. First, she must show that she suffers from a medically determinable impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of twelve months or more. *See* 42 U.S.C. § 423(d)(1)(A). Second, she must show that the impairment renders her incapable of performing the work that she previously performed, or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. § 423(d)(2)(A).

Regulations promulgated pursuant to the Social Security Act specify the process that the Social Security Administration uses to determine whether an applicant is disabled. 20 C.F.R. § 404.1520. First, the agency considers whether the claimant is presently working in any substantial gainful activity. If so, he or she is not disabled. If not, the agency considers whether the claimant's impairment is severe. If not severe, he or she is not disabled. If the impairment is severe, the agency then considers whether the impairment meets or equals a specific impairment listed in the Listing of Impairments. If so, the applicant is disabled. If not, the agency considers whether the claimant is able to do any other work. If not, the claimant is disabled. If there are a significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 C.F.R. § 404.1520; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

An applicant may seek judicial review of a final agency decision pursuant to 42

U.S.C. §§ 405(g), 1383(c)(3). A district court determines de novo any part of a Magistrate Judge's Report and Recommendation that has been properly objected to. FED. R. CIV. P. 72(b)(3). A final decision may only be disturbed if the ALJ's findings are based on legal error, or are not supported by "substantial evidence in the record as a whole." *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000).

Findings of fact are conclusive if supported by "substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews*, 53 F.3d at 1039. Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Id.*

## III. DISCUSSION

### A. Treating Physician Rule

Plaintiff's first argument is that the ALJ erred by failing to follow the "treating physician rule." (MSJ at 14; Obj. at 2-6).

<u>1. Ninth Circuit Law on Opinions of Treating Physicians</u>

Ninth Circuit case law distinguishes between opinions from three kinds of physicians: treating physicians, examining physicians who do not treat the patient, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general matter, a treating physician's opinion generally carries more weight than a non-treating physician, and an examining source has more weight than a non-examining source. *Id.*

As a general matter, a "treating physician's medical opinion as to the nature and

severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (citing Social Security Ruling (SSR) 96-2p). Where a treating physician's opinion is not contradicted by another doctor, it may only be rejected for "clear and convincing reasons." *Lester*, 81 F.3d at 831. However, where the treating physician's opinion is contradicted by another doctor, the ALJ "may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

"An ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Brown*, 799 F.2d 1403, 1408 (9th Cir. 1986). The ALJ cannot simply state that the medical opinions are not supported by sufficient objective findings, or are contrary to the preponderant conclusions mandated by the objective findings, even when the objective factors have been listed. *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The ALJ must set forth his own interpretations and explain why they, and not the doctors', are correct. *Id.* at 421-22.

### 2. Application of the Treating Physician Rule

In this case, the ALJ stated that he gave "very little weight" to the opinions of Dr. Reuben Farris, Plaintiff's treating physician. (AR 26).

Dr. Farris, who practices family medicine, has treated Plaintiff since 2002. (AR 499). Dr. Farris has concluded that Plaintiff is permanently disabled and unable to work. (AR 521, 586). Dr. Farris has completed documentation regarding Plaintiff's condition on several occasions, including a Multiple Impairment Questionnaire on November 3, 2010. (AR 1133-40). At that time, Dr. Farris diagnosed Plaintiff with "numerous conditions," "including fibromyalgia, lumbar spinal stenosis with chromic pain, chronic cervical spine pain with radicular symptoms, right shoulder pain with impingement, irritable bowel syndrome, and major depression." (AR 1133). He based

these diagnoses on a bone scan, x-rays, an MRI, brain scan, aortic scan, CT scans, rheumatoid testing, sonograms, ultrasounds, colonoscopy, endoscopy, neurological testing, and other testing which was illegible. (*Id.*) To the extent legible to this Court, Dr. Farris listed primary symptoms including flu-like symptoms, extreme fatigue, dizzy spells, aches, headaches, muscle stiffness, joint pain, back and cervical pain, spasms, numbness, nerve pain, abdominal pain, bloating, heartburn, insomnia, anxiety, sadness, fatigue, and loss of energy. (AR 1134). He stated that she was in "constant" pain and rated both her pain and fatigue as a 9 on a scale of 1 to 10, with 10 as the most severe. (AR 1135).

Dr. Farris concluded that Plaintiff was able to sit less than 1 hour total and stand/walk less than 1 hour total in an 8-hour workday. (*Id.*) He stated that she needed to get up and move every 5 to 10 minutes when sitting, and not sit again for 5 to 10 minutes. (AR 1135-36). He found that Plaintiff could not lift or carry as much as 5 pounds with the right arm, and could only occasionally lift and carry 5 pounds with her left arm. (AR 1136). He also stated that, due to severe pain, Plaintiff could not do any repetitive reaching, handling, fingering, or lifting for more than a few minutes. (*Id.*) He stated that Plaintiff's pain, fatigue, and other symptoms "constantly" interfered with her attention and concentration. (AR 1138). He stated that her depression left her incapable of tolerating even low work stress, and that she was unable to function in social situations and had high anxiety. (*Id.*)

In his decision on February 25, 2011, the ALJ stated his justification for giving the opinion of Plaintiff's treating physician little weight. He stated that Dr. Farris' opinions were "not consistent with the record as a whole, nor with the medical experts' testimony and the claimant's presentation at the hearings." (AR 27).

The ALJ incorporated the discussion of the weight given to medical source opinions which he had included in his August 31, 2009 decision. (AR 26). Although this opinion was vacated by the Appeals Council, the decision of the Appeals Council

in no way related to this discussion[1], and this Court sees no reason for the ALJ to actually copy his past findings, rather than incorporate them by reference, in order to be proper. *See Alsyouf v. Astrue*, No. EDCV 11-1867 SS, 2013 WL 327794, at *12 (C.D. Cal. Jan. 29, 2013).

In the August 2009 decision, the ALJ acknowledged the treating physician rule, and gave specific and legitimate reasons for not according that opinion controlling or significant weight. (AR 106-07). The ALJ specifically found that Dr. Farris' opinion was "not consistent with other evidence in the medical records." (AR 106). He noted that Dr. Farris is a family practice physician who is not a specialist in any field. (*Id.*) The ALJ discussed the fact that although Dr. Farris stated Plaintiff could not perform any work activity, multiple specialists, including orthopedic surgeons, neurologists, and pain management specialists, had not opined that she was unable to perform any work activity. (*Id.*) He also pointed to the fact that determination of whether someone is "disabled" is a conclusion for the Commissioner, and that Dr. Farris diagnosed fibromyalgia without certain specific examination findings. (AR 107).

In the February 25, 2011 decision, the ALJ specifically discussed two opinions offered by Dr. Farris in 2010. He considered an August 26, 2010 opinion in which Dr. Farris concluded Plaintiff was disabled, but did not set out function-by-function limitations. (AR 27). The ALJ rejected the opinion, noting that Dr. Farris is not a specialist in any of the areas corresponding to Plaintiff's specific conditions. (*Id.*). The ALJ also specifically addressed the November 3, 2010 opinion described above. Although this opinion included function-by-function limitations, the ALJ concluded that these limitations were "so extreme that it would be hard for claimant to function at all or perform the activities of daily living and self-care that she admits she accomplishes if they were accurate." (*Id.*) The ALJ rejected this opinion and gave it

---

[1] The Appeals Council remanded the case to the ALJ on the basis that a particular residual functional capacity finding about her ability to perform sedentary work was insufficiently supported, particularly in light of the need to consider Plaintiff's ability to stoop. (AR 114-15). The Appeals Council did not express any concerns about the ALJ's weighing of medical expert testimony, or his credibility findings.

no weight. (*Id.*)

Review of the record supports the legitimate and specific reasons offered by the ALJ. Although Plaintiff received evaluation and treatment by a number of different treating and consulting physicians, Dr. Farris was the only doctor to assess disabling limitations. (AR 106, 583, 706, 1126, 1133-40, 1192). The limitations related to orthopedic, rheumatologic, and psychological impairments. The specialists in these fields disagreed with Dr. Farris, a nonspecialist. Although Plaintiff objected that the ALJ failed to identify the contradictory findings, (Obj. at 3), review of the ALJ's orders reflects that he provided a careful summary of the findings of the different physicians, including Dr. Farris. (AR 25-27, 103, 105-08). Plaintiff also objects to the ALJ's decision to give greater weight to Dr. Landau, a non-examining source. (Obj. at 4). Review of the order indicates that the ALJ justified his decision to give little weight to Dr. Farris, and considered the opinions of a number of other examining and non-examining sources.

The ALJ discussed relevant evidence of Plaintiff's orthopedic complaints. In 2005, Plaintiff's treating orthopedic surgeon, Dr. Louis Lurie found few objective findings to support her pain complaints, stated that her physical examination and x-rays were unremarkable, and that there was no evidence of significant disease on her films. (AR 105, 932). He stated that she should see a pain consultant or rheumatologist, as orthopedically, there were no findings. (AR 105, 932). In 2008, Dr. Lurie reviewed x-rays and stated that they showed well-maintained disk spaces with no scoliosis and some mild degenerative disease. (AR 107, 933). The ALJ also considered the diagnostic studies associated with Plaintiff's orthopedic conclusions. (AR 105, 107). The ALJ discussed the detailed findings of another orthopedic surgeon, Dr. Frederick Close, who examined Plaintiff in May 2007. (AR 107). Dr. Close noted, amongst other things, that she had a normal gait and heel to toe walking, had normal ranges of motion in her cervical spine, bilateral shoulders, elbows, wrists, and fingers, and that shoulder impingement tests were negative. (AR 107, 593). Dr. Close found that

Plaintiff could sit or stand and/or walk at least six hours in an eight-hour workday with normal rest breaks, that she could lift and carry fifty pounds occasionally and twenty-five pounds frequently, and that she could occasionally bend, stoop, crouch, squat, kneel, crawl, or climb. (AR 107, 594).

The ALJ also considered the medical opinion of a rheumatology specialist, Dr. Adrian Jaffer, who stated that Plaintiff's pain and other fibromyalgia symptoms could improve 30-40 percent on a treatment regimen. (AR 26, 1084).

Additionally, Dr. Farris stated that Plaintiff had limitations due to major depression, including an inability to tolerate even low work stress and an inability to function in social situations. (AR 1126, 1138). However, the ALJ discussed in detail a cognitive psychiatric evaluation of Plaintiff by a board certified psychiatrist, Dr. Jaga Nath Glassman. (AR 103, 597-602). Dr. Glassman stated that she appeared to be animated and responsive, and did not exhibit significant sadness, depression, anxiety or agitation. (AR 103, 601). He reported that she has not undergone any mental health treatment, had no history of psychiatric hospitalization or suicide attempts, and was not on any psychotropic medications. (AR 103, 600). Dr. Glassman diagnosed Plaintiff with a pain disorder with possible medical and psychological contributions. (AR 103, 602). He concluded that Plaintiff appeared capable of behaving in a socially appropriate manner, getting along adequately with others, adapting to some degree of stress and changes in a workplace, following simple and complex instructions, and maintaining concentration. (AR 103, 602).

The ALJ also referred to Plaintiff's reported daily activities. The earlier decision referenced the fact that she reported caring for personal hygiene, performing some cooking, cleaning, laundry, and taking walks. (AR 108).

Plaintiff objects to the ALJ's use of Plaintiff's "presentation at the hearings," and argues that such observations are an insufficient basis for the ALJ's conclusions. (Obj. at 4-5). However, the ALJ clearly considered the Plaintiff's presentation in addition to other appropriate factors. The ALJ did not reject objective evidence solely on the

basis of subjective observations; his observations lent additional support to a conclusion based upon the reasonable evaluation of medical opinions.

In her Objection, Plaintiff points out that even if the opinion of a treating physician is not to be accorded controlling weight under the treating physician rule, it still should be weighed according to regulations and often is given the greatest weight. (Obj. at 6). Here, however, this Court cannot say that the ALJ erred in deciding to give "very little weight" to Dr. Farris' opinions. In considering the proper weight to give a medical opinion, factors an ALJ should consider include the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors brought to their attention. 20 C.F.R. §§ 404.1527, 416.927. The reasoning stated above supports the weight the ALJ gave to the evidence. This Court cannot say that the ALJ erred in giving it "very little weight."

Review of the record shows that the treating physician's diagnosis was contradicted by the opinions of other doctors, and that the ALJ gave specific and legitimate reasons, supported by substantial evidence, for rejecting that opinion. The ALJ's discussion of Dr. Farris' lack of specialization, the contradiction between his testimony and that of the specialists, and the inconsistencies with Plaintiff's reported daily activities provide sufficient reason to reject the opinion, and were supported by substantial evidence in the record. The ALJ did not commit any legal error in deciding to give little weight to the opinion of Plaintiff's treating physician.

### B. Evaluation of Plaintiff's Subjective Testimony

Plaintiff also argues that the ALJ improperly rejected her subjective testimony regarding her symptoms. (Obj. at 6). The ALJ found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her statements about the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the residual functional capacity assessment. (AR 25). He stated the "clear and convincing reasons" for finding that Plaintiff's allegations of disabling limitations were not credible to the extent

alleged. (AR 26).

First, the ALJ incorporated by reference his credibility findings from his August 2009 decision. (*Id.*) In that decision, the ALJ concluded that the "objective medical evidence and claimant's acknowledged activities are consistent with the ability to perform activities at the above stated residual function capacity levels and inconsistent with the inability to do any work activity." (AR 109). In finding that Plaintiff was "not totally credible" in alleging that she could not perform work at the residual functional capacity found by the ALJ, the ALJ listed 13 specific "clear and convincing reasons." (AR 108).

In summary, the ALJ considered 1) her daily activities of caring for personal hygiene, some cooking, cleaning, laundry, and taking walks; 2) that Plaintiff informed psychiatrist Dr. Glassman that only physical problems and pain, not mental problems, interfered with her functioning; 3) that Plaintiff did not describe a pervasively sad or down mood and enjoyed many activities; 4) that Plaintiff reported no mental health treatment, mental health hospitalizations, or suicide attempts, and was not on psychotropic medications; 5) that Plaintiff's failure to follow up with her treating orthopedist for a year was not consistent with someone suffering from severe and unremitting orthopedic pain; 6) that orthopedist Dr. Lurie reported her examination and x-rays were unremarkable; 7) that Mr. Graeme, a physician's assistant for a pain specialist, noted that she had multiple evaluations for neck and lower back pain and none had more than minimal findings; 8) that Mr. Graeme reported that Plaintiff was adamantly opposed to any injections or interventional treatment, was not very interested in treating her pain on a chronic basis with medications, and was not sure if she was willing to participate in cognitive and behavioral therapy approaches[2]; 9) that she walked with a normal gait and had normal heel and toe walking in her consultative orthopedic examination; 10) that thoracic and cervical spine x-rays showed a negative

---

[2] The ALJ noted that the regulations state that if a claimant fails to follow prescribed treatment without a good reason, they will not be found disabled. (AR 109). He noted that her claim could be denied on the basis of this regulation. (*Id.*)

thoracic spine and minimal narrowing at the C4-5 disc space; 11) that lumbosacral spine x-rays showed disc spaces were well-maintained without scoliosis and with only some mild degenerative disease; 12) that no physicians ever opined that Plaintiff's impairments met or equaled the listing level limitations; and 13) that objective evidence in the medical record does not establish impairments likely to produce disabling pain or other limitations as alleged for a period of 12 or more continuous months. (AR 108-09).

In the February 2011 opinion, the ALJ added additional reasons. In summary, the ALJ considered important: 1) that a note about her retirement did not say it was due to medical reasons; 2) that her complaints of dizziness, tenets, and hearing loss improved; 3) an unremarkable MRI; 4) the findings in various records that she exhibited no acute or chronic stress, could communicate, had normal orientation, was alert, had normal gait and station, had no depression, had normal motor skills, etc.; 5) that rheumatologist Dr. Jaffer stated that a treatment could improve her pain and function by 30-40 percent, that her cognition was normal, and that her x-rays were essentially normal other than certain degenerative changes; 6) that Plaintiff's treatment was conservative; 7) that there was no evidence her cognitive ability cannot sustain the requirements of skilled work; 8) that Dr. Landau stated that she had multi-system complaints, but that they were vague or age-related; 9) that there was no evidence of hospitalization; and 10) that she was capable of attending the hearing and participating on her own behalf. (AR 26).

### 1. Ninth Circuit Law on Evaluating Claimant's Subjective Testimony

Where a claimant has produced objective medical evidence of his impairments, an ALJ may reject the claimant's subjective complaints only if the ALJ either 1) finds evidence of malingering, or 2) expresses "clear and convincing reasons" for doing so. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). There was no finding of malingering in the instant case. The ALJ must state which symptom testimony he finds not credible with enough specificity to allow a reviewing court to

confirm that the testimony was rejected on permissible grounds, and not arbitrarily. *Id.* at 1041.

In considering a claimant's testimony, the ALJ may consider a number of factors, including the claimant's reputation for truthfulness and any inconsistencies in claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)). The ALJ may also consider any inconsistencies between claimant's testimony, and claimant's conduct, daily activities, work record, and testimony from physicians and third parties about the nature, severity, and effect of the claimed symptoms. *Id.* (citing *Light*, 119 F.3d at 792).

### 2. Application to Plaintiff's Testimony

The ALJ provided "clear and convincing reasons" for finding that Plaintiff's claims were not credible, backed by substantial evidence in the record. Although the Plaintiff disagrees with the relevance of several of the reasons, and many of them would not suffice, standing alone, to support a finding that she was not credible, there is more than enough relevant evidence for the ALJ to reach his conclusions. Plaintiff does not dispute the findings from the August 2009 opinion which were incorporated by reference, except to state that they should not be considered because the earlier decision was vacated. As discussed above, it is appropriate to consider the August 2009 decision to the extent its reasoning was explicitly incorporated. The credibility findings were made in regard to a different residual function capacity determination. However, nothing in the record suggests that it was improper for the ALJ to state these reasons again as support for his conclusion that her testimony was still not credible, and to restate them by referencing his earlier opinion.

Plaintiff also argues that the ALJ relied upon the conservative treatment and lack of hospitalizations, without evidence that more aggressive treatment was warranted. (Obj. at 8). However, the ALJ cited to Plaintiff's rejection of or resistence to many different treatment options proposed by a pain management specialist. Additionally,

as stated above, the ALJ offered many other specific reasons for concluding that the objective medical evidence and Plaintiff's acknowledged activities supported finding her not credible.

The ALJ points to specific instances in the medical record where objective evidence is inconsistent with Plaintiff's claims, notes a course of conservative treatment and failure to follow up with Dr. Lurie that are inconsistent with claims about her pain level, and points to daily activities that appear inconsistent with her claims. The ALJ did not commit legal error in finding that there were clear and convincing reasons to find Plaintiff's testimony not credible, and there is substantial evidence in the record to support his finding.

## IV. CONCLUSION

After a careful review of the briefing and record in this matter, this Court concludes that no error was committed. The Report and Recommendation is **ADOPTED**. Plaintiff's Motion for Summary Judgment is **DENIED**. Defendant's Cross-Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

Dated: December 09, 2013

HON. ROGER T. BENITEZ
United States District Judge